The plaintiff, Continental Insurance Company, insurers of Roland Brierre, brought this suit against the defendant, Oliver J. Himbert, Jr., for damages to Brierre's automobile in the sum of $211.97, caused as a result of the theft of the said automobile from the parking lot of defendant. From a judgment in favor of plaintiff in the amount of $186.97, defendant prosecutes this appeal.
Prior to the trial of this cause, counsel entered into an agreement relative to the pertinent facts of the case, which "stipulation" reads in part as follows:
"(1) That the Continental Insurance Company is a corporation organized under the laws of the State of New York, authorized to do and doing business in the State of Louisiana.
"(2) That on July 27, 1943, the Continental Insurance Company was engaged in the insurance business and had in full force and effect a certain policy of theft insurance on an automobile owned by Roland Brierre and, under the terms of said policy, the Continental Insurance Company was bound to indemnify Roland Brierre for any loss or damage to his automobile caused by theft.
"(3) That Oliver J. Himbert, Jr. on July 27, 1943, operated a parking lot located at 536 Camp Street in the City of New Orleans known as the Federal Parking lot.
"(4) That as of July 27, 1943, Oliver J. Himbert, Jr. had an agreement with all of his customers, including Roland Brierre, that the said parking lot was operated only between the hours of 8:00 A.M. and 5:30 P.M. Monday through Saturday and was closed on Sundays and holidays.
"(5) That Oliver J. Himbert, Jr. also had an agreement with all of his customers, including Roland Brierre, that his employees left said parking lot at 5:30 P.M. and, when they left, they would place the keys of each automobile either under the mat in the front of the automobile near the drivers' seat or on the back of the sun visor above the drivers' seat in the front of the automobile.
"(6) That on the morning of July 27, 1943, Roland Brierre parked his said automobile on the Federal Parking Lot and it was subsequently stolen and later recovered in Richmond, Virginia in a damaged condition.
"(7) That the Continental Insurance Company was called upon to pay under the terms of their theft policy and did pay to said Roland Brierre the sum of Two Hundred Eleven Dollars and Ninety-Seven cents ($211.97) as a result of the theft of his automobile and, upon payment, the Continental Insurance Company became subrogated of any and all rights of Roland Brierre *Page 607 
against Oliver Himbert, Jr., in the amount of payment aforementioned."
At the termination of the trial counsel for plaintiff waived an item of damage in the amount of $25, representing the loss of the use of the car to Brierre, thereby reducing plaintiff's claim for damages from $211.97 to $186.97.
Counsel for plaintiff and defendant agree that if Brierre returned to defendant's parking lot after 5:30 P.M. on July 27, 1943, for his automobile, no liability for the theft can attach to defendant; conversely if Brierre returned to the parking lot prior to 5:30 P.M. on the day in question, and there were no attendants present, and the car was missing, then, in that event, defendant is liable. Therefore, the sole question presented is whether Brierre called at the parking lot for his automobile before or after 5:30 P.M. on July 27, 1943.
The operator of a parking lot is a compensated depositary. Munson v. Blaise, La. App., 12 So.2d 623. Revised Civil Code, Articles 2937 and 2938. The responsibility of a depositary is that of an ordinary prudent man using "the same diligence in preserving the deposit that he uses in preserving his own property." Kaiser v. Poche, La. App., 194 So. 464, 466; Revised Civil Code Article 2937. The contract between defendant and Brierre was a limited obligation as to the time of performance. Revised Civil Code, Articles 1996 and 2048. Defendant, for a consideration, undertook the safekeeping of automobiles, particularly Brierre's, between the hours enumerated — 8:00 A.M. to 5:30 P.M. After 5:30 P.M. the obligation of defendant, as a compensated depositary, ceased because of the nature of the contract, however, he was still required by law to exercise reasonable care in the delivery of the automobiles to his customers and in leaving the cars for those customers who had not called for them by 5:30 P.M. The repeated practice of leaving the keys to the cars either under the floor mats or within the confines of the sun visors after 5:30 P.M., was so well understood and had been done so often with all of the customers including Brierre as to constitute a custom. Upon the termination of the contract for the safekeeping of a compensated deposit, there was a constructive delivery of the automobile to the owner thereof.
In the record we find two uncontradicted written statements emanating from defendant's employees, Melvin Gaines and Curtis Ross, to the effect that they left the parking lot after 5:30 P.M. Gaines' statement further emphasized that Brierre's car was still in the parking lot when he left after 5:30 P.M.
Brierre, himself, is most uncertain as to the time at which he arrived at the parking lot. In fact, his testimony was conflicting concerning this vital point.
Opposed to this equivocal testimony is that of defendant's two employees. Since Brierre knew and had agreed that after 5:30 P.M. his car would be left with the keys, either under the floor mat or within the confines of the sun visor, he had empowered defendant to make constructive delivery of the automobile to him. A deposit is completed with the return of the thing deposited. Revised Civil Code, Article 2930. Thus defendant's liability ceased at 5:30 P.M. on July 27, 1943, with the return of the deposit.
We are fully cognizant of the well accepted premise that on questions of fact a judgment of a lower court will not be disturbed unless manifestly erroneous, however, in this case, we are impressed by the dubious testimony of Brierre relative to the time that he arrived at the parking lot as opposed to the accepted and uncontradicted statements of both defendant's witnesses, which, in our opinion, distinctly turned the scales in defendant's favor.
We are, therefore, of the opinion that plaintiff has failed to prove its case.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of the defendant dismissing plaintiff's suit at its cost.
Reversed. *Page 608