Louis Tammelleo *vs.* Irving Solomon *et al. d.b.a.* Empire Parking Company.

MAY 11, 1949.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is an action of trespass on the case for negligence of the bailee of an automobile. A jury in the superior court returned a verdict for the defendants. Plaintiff's motion for a new trial was heard and denied and the case is before us on his exceptions to that decision and to certain portions of the charge of the court.

The defendants operated a parking lot for profit in the city of Providence. On the evening of September 24, 1942, the plaintiff parked his automobile, hereinafter called the car, on that lot and paid the parking fee to an employee of the defendants who, after requesting him to leave the ignition key in the lock, asked him when he expected to return for the car. As the plaintiff was uncertain, the attendant, according to plaintiff's own testimony, then said to him: "I will leave your key underneath the mat in the car," to which he answered, "Okay." He returned to the lot about 2:45 o'clock the next morning but the car was not there. It had been driven away sometime after 1 a.m. by William H. Hines, a lot attendant who worked for the defendants from 8 a.m. to 6 p.m. When Hines

took the car he was off duty and under the influence of liquor. The car was later recovered in Attleboro, Massachusetts, in a damaged condition as the result of an accident.

The evidence was conflicting as to the time when the lot closed at night. Plaintiff denied having received a parking ticket from the attendant who parked his car and he also denied that the latter told him the lot closed at 11 p.m. He further testified that he paid no attention to signs on the lot stating that such was the closing time.

William Zander, Jr., the attendant who parked the car, testified that he told plaintiff the lot closed at 11 p.m., and if the latter did not expect to return by that time and would wait a few minutes he could park the car so that plaintiff might lock it and keep the key, or else he, the witness, would leave the key at a nearby cabstand when he left for the night. As the plaintiff replied that neither of those things was necessary, Zander then told him that at closing time he would put the key underneath the mat in the car. The witness further testified that plaintiff agreed, saying that such arrangement was "perfect"; and that when he, Zander, closed for the night he left the key in the car as directed.

Hines, whose recollection was admittedly hazy as to his actions that night, testified that he found the key underneath the mat, although in a statement to Howard Sprigg, an inspector of the Attleboro police department, he said the key was on the visor of the windshield. The inspector, a witness for the defendants, further testified that, in relating the circumstances surrounding the loss of the automobile, plaintiff stated that the attendant had informed him the lot closed at 11 p.m. A parking ticket complete with stub was found in the car by the inspector when Hines was arrested in Attleboro.

The trial justice sent the case to the jury with clear instructions for them to determine the actual agreement between the parties under the conflicting evidence and the reasonable inferences therefrom. He instructed them that

if they found the plaintiff had been told the lot closed at 11 p.m. and if he understood that thereafter it would be unattended, and if they further found he had consented that the key be left underneath the mat in the car in case he did not return by closing time, and that the attendant had followed such instructions, then they should find for the defendants; otherwise the plaintiff was entitled to their verdict. He also instructed the jury that the fact the car was taken by Hines, an employee of the defendants, was immaterial in the circumstances as at the time of the taking he was not their servant. The jury returned a verdict for the defendants, and thereafter the trial justice denied the plaintiff's motion for a new trial, without comment, in a decision from the bench.

Plaintiff bases his exception to the denial of the motion for a new trial on the contention that the evidence strongly preponderates against the verdict. In support of such contention he argues that the decision of the trial justice on that motion should not be given the persuasive force that is usually accorded thereto in this court because his decision, which was from the bench and stated no reasons therefor, shows that he failed to pass his independent judgment on the weight of the evidence and the credibility of the witnesses as required by our well-settled rule governing a motion for a new trial.

It is clear from the evidence that the relation between the parties was that of bailor and bailee for hire, in which case the latter is held to the exercise of ordinary care in complying with the terms of the bailment contract, express or implied. The conditions under which automobiles are parked now vary to such an extent that it is impossible to state a rule of general application in all instances. The decision in each case must necessarily rest upon its own facts and circumstances. In the instant case the parties are in serious disagreement as to the terms of the bailment, especially as to the disposition of the keys when the lot would close and be left unattended. The conflicting

and irreconcilable evidence on this point presented a clear question of fact for the jury, which they determined in favor of the defendants.

According to the evidence this case turned on whether the plaintiff or Zander was believed. If the plaintiff had no notice of the closing time and he did not agree that the key be left underneath the mat in the car when Zander left for the night, then the defendants were liable. In such circumstances the case would fall within the rule followed in *Starita* v. *Campbell*, 72 R. I. 405. On the other hand, if the plaintiff was told by Zander that the lot closed at 11 p.m. and if he agreed that the key be left in the car and Zander complied with those terms when he left the lot, then the defendants were not liable as the bailment was terminated in accordance with an express agreement between the parties. Under the latter view of the evidence the bailment contract was limited as to the length of time for which the bailment was to continue. Upon the expiration of that time and by putting the key in the car as specified, there was in law a constructive delivery of the car to the plaintiff. The very recent Louisiana case of *Continental Ins. Co.* v. *Himbert* (La.), 37 So. 2d 605, expresses the same view in almost identical circumstances.

We regret that the trial justice failed to indicate in any way the grounds for his decision in accordance with our often-repeated statement of his duty. See *Warren* v. *Martini*, 72 R. I. 36. Because of such failure and the plaintiff's contention that the evidence strongly preponderates against the verdict, we have been obliged to examine the evidence without the assistance of the trial justice's appraisal thereof. Upon a careful examination we cannot agree with plaintiff's contention. There is nothing inherently improbable or so contradictory in the testimony of Zander as to lead us to the conclusion that his testimony should have been rejected entirely by the jury in favor of plaintiff's testimony on the controlling point in the case. The conflicting evidence

raised a plain question of credibility and the jury apparently believed Zander and the Attleboro police inspector.

A consideration of all the evidence and not merely a selected part thereof, as the plaintiff does in his brief, presents a situation where the evidence is so sharply conflicting and nearly balanced that fair-minded men might reasonably arrive at opposite conclusions. In such circumstances a trial justice, under our well-settled rule, would not be warranted in disturbing the jury's verdict and granting a new trial even though his own judgment might incline him to a contrary view. *Monacelli* v. *Hall*, 71 R. I. 55, 61; *Nichols* v. *New England Tel. & Tel. Co.*, 57 R. I. 180. We are of the opinion that the evidence, when considered under the appellate rule, does not strongly preponderate against the verdict. The exception under consideration is therefore overruled.

Plaintiff's next exception is to that part of the charge wherein the trial justice instructed the jury that in the circumstances it was immaterial that Hines was an employee of the defendants. In his brief and argument the plaintiff contends that the defendants should be held liable because they were negligent in hiring and retaining Hines as an employee. This contention is apparently based on the theory that the operator of a parking lot who invites a customer to leave his automobile on the lot under a bailment for hire is. bound to exercise ordinary care to employ trustworthy servants, and that if the bailee fails to exercise such care he is responsible to the bailor for any loss of or damage to the latter's automobile proximately caused by the tortious act of an employee whether he is on or off duty. In other words, under such contention the liability of the parking lot owner is predicated upon his legal duty to exercise ordinary care in the selection of employees, and not on the doctrine of *respondeat superior*.

In substance and effect the plaintiff contends that the parking lot operator and not the customer has and exercises the power of selecting the employees. We entertain

no doubt that one who undertakes to operate a parking lot as a bailee for hire and who, for his own advantage and convenience, requires that a customer leave the key in the car is under the legal duty to exercise ordinary care to employ trustworthy employees. See *Handley* v. *O'Gorman,* 45 R. I. 242. In such circumstances it is claimed that the customer, in so far as his automobile is concerned, is practically at the mercy of those to whom he entrusts his property, and that he has the right to assume that the parking lot operator has exercised ordinary care to employ persons who are worthy of trust. It is, however, unnecessary to pass upon this point as the plain answer thereto is that there was no such issue in the instant case. Whether there is merit in the contention, which the plaintiff makes for the first time in this court, must be left for determination in some future case wherein that issue is duly raised. This exception is overruled.

Under his last exception the plaintiff complains of certain statements in the charge, contending that the trial justice dealt with the evidence and the reasonable inferences therefrom in a manner prejudicial to him. We find no ground for such complaint. Our examination of the charge as a whole shows that the trial justice, after pointing out to the jury the undisputed evidence in the case, fairly left the controlling issue to them for their determination. This exception is overruled.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*John P. Cooney, Jr.,* for plaintiff.

*Carroll & Dwyer, Edward F. J. Dwyer,* for defendants.